UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA ELAINE TAYLOR,

        Petitioner,

                              CASE NO. 04-CV-73597-DT
v.                              JUDGE DENISE PAGE HOOD
                              MAGISTRATE JUDGE PAUL J. KOMIVES

CLARICE STOVALL,

        Respondent.
_____/

**REPORT AND RECOMMENDATION**

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.    REPORT:

A.    *Procedural History*

1.    Petitioner Lisa Elaine Taylor is a state prisoner, currently confined at the Robert Scott Correctional Facility in Plymouth, Michigan.

2.    On February 28, 2003, petitioner was convicted of one count each of armed robbery, MICH. COMP. LAWS § 750.529; and felonious assault (assault with a dangerous weapon), MICH. COMP. LAWS § 750.82(1), pursuant to her guilty plea in the Genesee County Circuit Court. On March 31, 2003, she was sentenced to a term of 210-315 months' imprisonment on the armed robbery conviction. On April 3, 2003, she was sentenced to a concurrent term of 18-48 months' imprisonment on the assault conviction, which the trial court had overlooked at the original sentencing hearing.

3.    Petitioner sought leave to appeal in the Michigan Court of Appeals raising, through

counsel, the following claim:

> SHOULD DEFENDANT RECEIVE THE SPECIFIC PERFORMANCE OF A PLEA AGREEMENT, WHICH INDUCED HER TO PLEAD GUILTY UPON THE BELIEF THAT THE SENTENCING GUIDELINE RANGE WAS 81 MONTHS TO 135 MONTHS?

The court of appeals denied petitioner's application for leave to appeal in a standard order. *See People v. Taylor*, No. 251679 (Mich. Ct. App. Dec. 1, 2003).

4.    Petitioner, proceeding *pro se*, sought leave to appeal this issue to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Taylor*, 470 Mich. 861, 679 N.W.2d 700 (2004).

5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on December 3, 2004. As grounds for the writ of habeas corpus, she raises the plea claim that she raised in the state courts.

6.    Respondent filed her answer on August 5, 2005. She contends that petitioner's claim is without merit.

B.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, her petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable

> application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the

3

holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

C.      *Analysis*

Petitioner contends that she and the prosecutor entered into a plea agreement whereby her minimum sentence would be within the sentencing guideline range of 81-126 months' imprisonment. Because the presentence report computed her actual guideline range on the minimum sentence as 135-210 months' imprisonment, and because the trial court sentenced her in this higher range, petitioner contends that she was entitled to either specific performance of the agreement or

to withdraw her plea.[1]  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.  *The Plea and Sentencing Proceedings*

Petitioner was initially charged with armed robbery and felonious assault.  In addition, the prosecutor filed a notice of intent to seek an enhancement to her sentence based on her status as an habitual offender.  On February 28, 2003, the parties entered into a plea agreement whereby petitioner would plead guilty to both charges, and the prosecutor would neither seek an enhanced habitual offender sentence nor request that the court exceed the applicable guideline range.  In the course of explaining the agreement, the prosecutor and defense counsel also indicated their preliminary assessment of the applicable guideline range:

> THE COURT:  All right.  Is there going to be an offer to resolve this case prior to trial, Ms. McKellar?
> MS. McKELLAR:  Yes, your Honor.
> Ms. Taylor was originally charged with Armed Robbery and Assault With a Dangerous Weapon.
> The offer is for Ms. Taylor to plead to Armed Robbery and Assault With a Dangerous Weapon, however, the People will not seek Habitual Offender status.  Ms. Taylor does have several prior felonies.
> Also, the People agree that they would ask the Court to stay within the guidelines.
> THE COURT:  All right, Mr. Chatterton, how do you wanna proceed today?
>
> \* \* \* \*
>
> MR. CHATTERTON:  Your Honor, that is correct.  On behalf of Ms. Taylor, we are as part of this plea requesting that the Court confine its sentencing, the incarceration it's likely to impose upon Ms. Taylor to that within the guidelines.

---

[1] Petitioner has not filed a brief in support of her petition in this Court.  Accordingly, I look to petitioner's statement of the claim in her form petition and her state court briefs in analyzing the scope and substance of the claim.

|                    |                                                                                                                                                  |
|--------------------|--------------------------------------------------------------------------------------------------------------------------------------------------|
|                    | It's my understanding the guidelines–the guidelines from my review and I believe also Ms. McKellar's go from a range of as little as 80 months to as high as 131 months. |
| MS. McKELLAR:      | I believe it's somewhere in the range of 81 to 135 without Habitual Offender and goes–                                                           |
| THE COURT:         | All right.                                                                                                                                       |
| MR. CHATTERTON:    | That's correct, your Honor.                                                                                                                      |
| THE COURT:         | But you certainly, if you don't object then you're not going to be in here asking me to exceed the guidelines, right?                            |
| MS. McKELLAR:      | I'm not going to ask you to exceed the guidelines, your Honor.                                                                                   |
| THE COURT:         | Are you recommending I stay in the guidelines?                                                                                                   |
| MS. McKELLAR:      | Yes, your Honor.                                                                                                                                 |
| THE COURT:         | All right.  Then if you do so recommend, unless there is a problem under Killebrew, I will allow it to go in the guidelines.                     |
|                    | Ms. Taylor, did you hear the plea agreement now placed on the record?                                                                            |
| THE DEFENDANT:     | Yes.                                                                                                                                             |
| THE COURT:         | And do you understand the agreement, ma'am?                                                                                                      |
| THE DEFENDANT:     | Yes, I do, your Honor.                                                                                                                           |

Plea Tr., at 3-5.

The trial court informed petitioner, and she indicated she understood, that the maximum possible sentence on the armed robbery charge was life imprisonment, and that the maximum possible sentence on the assault charge was four years' imprisonment. *See id.* at 7. After ensuring that petitioner understood the rights she was giving up and that there was a factual basis for the plea, the trial court accepted petitioner's guilty pleas.

The parties appeared for sentencing on March 31, 2003. The presentence report identified several additional criminal convictions which the parties had not known about at the time of the plea, resulting in a higher guideline range for the minimum sentence. At that time, however, neither petitioner nor her counsel raised any objection to the scoring of the prior offenses or the ultimate guideline range computed based on those offenses. The trial court imposes a minimum sentence of

210 months' imprisonment on the armed robbery charge. This sentence was within, albeit at the top of, the applicable guideline range.

Because the trial court had overlooked sentencing on the assault conviction, the parties again appeared for sentencing on April 3, 2003. At that hearing, the following exchange occurred:

> THE COURT: And, Ms. Taylor, would you like to make any other allocution prior to the imposition of sentence on Count Two?
> THE DEFENDANT: No, well, except that the plea– the plea agreement was different, it was–
> THE COURT: The plea agreement was different?
> THE DEFENDANT: Yeah.
> MR. CHATTERTON: I think Ms. Taylor is referring to the guidelines and the fact that they were higher than we initially estimated.
> THE COURT: Well, there were no–there was no commitment that I'm aware of that the guidelines would be any particular number, was there, Ms.–was there–
> MR. CHATTERTON: There–there were references made by myself and Ms. McKellar that we had scored them and come to a lower maximum guideline than–
> THE COURT: What do you think was the difference or do you wish to discuss it at this time? I mean, they were scored and–
> MS. McKELLAR: Your Honor, I think there was–
> THE COURT: –we made all–
> MS. McKELLAR: –there were more prior that–
> THE COURT: Then you–
> MS. McKELLAR: –Ms. Taylor had that–
> MR. CHATTERTON: That we were unaware of–
> THE COURT: And you were unaware of–
> MS. McKELLAR: There may have been misdemeanors and felonies, I think there is more felonies than were on my notice to enhance.
> MR. CHATTERTON: I believe that's correct also–
> THE COURT: That's probably correct because–
> MS. McKELLAR: We did not come to–part of the plea agreement was for–the People would recommend the Court to stay within the guidelines, whatever the guidelines were, we did, Mr. Chatterton and myself did run them with the information we had at the time. The–the plea agreement did not state the actual–we didn't agree on a guideline number, we agreed that we would stay in the guidelines.
> MR. CHATTERTON: That's correct.

Sentence Tr., dated 4/3/03, at 4-5. The trial court declined to consider the matter further, and imposed a sentence on the assault conviction.

    2.    *Analysis*

Petitioner claims that the plea agreement included an agreement that her minimum sentence be within the 81-135 month range discussed by the prosecutor and her counsel at the plea hearing. Because her minimum sentence was above this range, she contends, she was entitled either to have the terms of the agreement enforced or to withdraw the plea under *Santobello v. New York*, 404 U.S. 257, 262 (1971). The Court should disagree.

In *Santobello v. New York*, 404 U.S. 257 (1971), the Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id*. at 262. The Court has subsequently clarified this language, holding that *Santobello* does not apply to every rescinded government promise. Rather, it applies only to those promises that induce a defendant to plead guilty. *See Mabry v. Johnson*, 467 U.S. 504, 507-08, 510 (1984). Under *Santobello*, the appropriate remedy for the government's breach of a plea agreement is either specific performance of the agreement or an opportunity to withdraw the plea. *See Santobello*, 404 U.S. at 263. The appropriate remedy is within the trial court's discretion, *see Santobello*, 404 U.S. at 263; *United States v. Bradstreet*, 207 F.3d 76, 80 (1st Cir. 2000); *Peavy v. United States*, 31 F.3d 1341, 1346 (6th Cir. 1994), and the Constitution does not require specific performance, *see Mabry*, 467 U.S. at 510 n.11; *Fields v. Attorney General of State of Md.*, 956 F.2d 1290, 1300 (4th Cir. 1992).

Here, there is no indication that the prosecution misrepresented the terms of the plea agreement. On the contrary, it was clear to the court, the prosecutor, and defense counsel that the

parties were not agreeing that any particular sentencing range applied. Rather, the parties only agreed that, whatever the applicable range, the prosecutor would not seek an upward departure. This understanding was confirmed by the prosecutor, defense counsel, and the court at the second sentencing hearing. "[A] federal court sitting in habeas review should not 'lightly find misrepresentation in a plea agreement.'" *Myers v. Straub*, 159 F. Supp. 2d 621, 627 (E.D. Mich. 2001) (Steeh, J.) (quoting *Montoya v. Johnson*, 226 F.3d 399, 406 (5th Cir. 2000)). Further, the prosecution is held only to the literal terms of the plea agreement. *See United States v. Packwood*, 848 F.2d 1009, 1012 (9th Cir. 1988). In determining the scope of a plea agreement, the content of the promises made is a question of fact. *See United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002); *United States v. Doe*, 940 F.2d 199, 202 (7th Cir. 1991). As to the facts, all involved were in agreement that the plea deal did not include an agreement on the applicable sentence range or on the actual sentence that the trial court would impose. The estimate as to the sentence was not a term of the agreement to which the prosecutor could be held. *See United States v. Oyegbola*, 961 F.2d 11, 14-15 (1st Cir. 1992); *United States v. Fortney*, 957 F.2d 629, 631 (8th Cir. 1992) (per curiam); *cf. United States v. Cavender*, 228 F.3d 797, 803 (7th Cir. 2000) ("Usually, where the sentencing calculations in a plea agreement are described as 'preliminary,' the later imposition of a higher sentence does not violate the plea agreement."). Accordingly, there is no *Santobello* violation. *See United States v. Ray*, 54 Fed. Appx. 621, 622 (6th Cir. 2002).

Nor can petitioner argue that the estimate discussed by the prosecutor and her counsel rendered her guilty plea involuntary. The Constitution requires, for a plea to be valid, that a defendant be informed of all direct consequences of her plea. *See Brady v. United States*, 397 U.S. 742, 755 (1970). Where the defendant "was fully aware of the likely consequences when [s]he

pleaded guilty[,] it is not unfair to expect h[er] to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). Generally, "as long as the defendant understands the length of time [s]he might possibly receive, [s]he is fully aware of the pleas's consequences." *James v. Cain*, 56 F.3d 662, 666-67 (5th Cir. 1995). Here, petitioner was informed by the trial court of the maximum possible sentence she faced on both charges. The erroneous estimate of the applicable sentence range at the plea hearing, even if it altered her own subjective expectations, did not render petitioner's plea involuntary. "[I]t is well settled that the government's erroneous estimate of a defendant's sentence does not provide grounds to vacate a guilty plea." *United States v. Eisenhart*, 43 Fed. Appx. 500, 504 (3d Cir. 2002). Likewise, "[a]n erroneous sentence estimate by defense counsel does not render a plea involuntary. . . [,] [nor does] a defendant's erroneous expectation, based on [her] attorney's erroneous estimate[.]" *Fields v. Gibson*, 277 F.3d 1203, 1214 (10th Cir. 2002) (internal quotation omitted). Accordingly, the Court should conclude that petitioner's guilty plea was not involuntary.

D.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver

of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 12/7/05

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on December 7, 2005.

s/Eddrey Butts
Case Manager